IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BRYANT KEITH PETTIFORD,       )
                              )
            Plaintiff,        )
                              )
      v.                      )         1:16CV220
                              )
NANCY A. BERRYHILL,           )
Acting Commissioner of Social )
Security,[1]                  )
                              )
            Defendant.        )

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Bryant Keith Pettiford, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 17; see also Docket Entry 15 (Plaintiff's Memorandum); Docket Entry 18 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff applied for SSI. (Tr. 182-88.) Upon denial of that application initially (Tr. 90-103, 129-32) and on reconsideration (Tr. 104-18, 133-42), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 143). Plaintiff, proceeding pro se, and a vocational expert ("VE") attended the hearing. (Tr. 52-68.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 33-47.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7, 29-31), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] has not engaged in substantial gainful activity since February 16, 2012, the application date.
>
> 2. [Plaintiff] has the following severe impairments: lumbar strain, depression, and polysubstance dependency.
>
> . . .
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 4. . . . [Plaintiff] has the residual functional capacity to perform medium work . . . except [Plaintiff] is limited to no more than frequent stooping, crouching, kneeling, and crawling. [Plaintiff] is limited to performing simple routine repetitive tasks which means that he could apply commonsense understanding to carry out instructions furnished in written, oral, or

diagrammatic form and deal with problems involving several concrete variables in or from standardized situations, and is unable to perform the work at a production rate.

. . .

5.   [Plaintiff] has no past relevant work.

. . .

9.   Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

10.  [Plaintiff] has not been under a disability, as defined in the [] Act, since February 16, 2012, the date the application was filed.

(Tr. 38-47 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead,

3

the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the

4

claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

---

[2] The Act "comprises two disability benefits programs. The Disability Insurance Benefits Program provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

Case 1:16-cv-00220-WO-LPA Document 19 Filed 02/24/17 Page 6 of 15

('RFC').") Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

### B. Assignment of Error

In Plaintiff's Memorandum in support of his instant motion, he did not identify any specific assignments of error (see Docket Entry 15), contrary to a clear directive from the Clerk (see Docket Entry 8 at 1 ("Plaintiff must file a brief with [his dispositive] motion . . . . The [argument] section [of the brief] should state in concise fashion each of the issues for review as is done in an appellate brief. Thereafter, each such issue should be discussed in a separate section which sets out the argument for each of the issues . . . .")), as well as the Local Rule requiring that all "[o]pening briefs filed with the Court shall contain . . . [a] statement of the question or questions presented," LR7.2(a)(3). Rather, under the heading "ARGUMENT," Plaintiff discussed his mental symptoms (see Docket Entry 15 at 2 (citing Tr. 298-301, 309-10)), and Global Assessment of Functioning scores (see id. at 4), recited the ALJ's summarization of Plaintiff's hearing testimony regarding his neck and back impairments (see id. at 3 (quoting Tr. 43)), criticized the ALJ for his "dismissive" treatment (id. at 2 (citing Tr. 45-46)) and "cherry picking" of consultative examiner Dr. James Barber's opinions (id. at 3), and mentioned that the ALJ "noted [Plaintiff's] failure to follow up with two orthopedic

referrals and that he seeks instead treatment from emergency room physicians" (id. at 5).[6]

Notwithstanding the lack of any specific assignment of error in Plaintiff's Memorandum, the Commissioner reasonably distilled from that filing that Plaintiff's challenge to the ALJ's evaluation of Dr. Barber's opinions represented the sole issue on review. (See Docket Entry 18 at 11 (listing "**STATEMENT OF THE ISSUE**" as "[w]hether the ALJ erred in evaluating Dr. Barber's opinion?").) Although the Court's Local Rules permitted Plaintiff to file a response brief to Defendant's dispositive filing and to argue that he had, in fact, raised issues in addition to his challenge to the ALJ's evaluation of Dr. Barber's opinions (see LR7.3(f) (providing

---

[6] Plaintiff's mention of the ALJ's statement regarding Plaintiff's failure to follow up with orthopedic referrals (which appears in the same paragraph as Plaintiff's assertion that he lacks health insurance) (see Docket Entry 15 at 5) might constitute an attempt to argue that the ALJ improperly discounted Plaintiff's credibility for failure to follow prescribed treatment, see, e.g., Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 3741856, at *7 (July 2, 1996) (providing that a claimant's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints," but that ALJ "must not draw any inferences about [a claimant's] symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment," such as an inability "to afford treatment")). However, any such argument fails as a matter of law, because the ALJ did not discuss Plaintiff's lack of orthopedic follow-up (or use of emergency room physicians) in connection with the assessment of Plaintiff's credibility (see Tr. 43-46); rather, the ALJ merely summarized, in his recitation of Plaintiff's treatment history (see Tr. 41), a family nurse practitioner's observations, on October 31, 2013, that Plaintiff "present[ed] for referral to [an] [o]rtho[pedist] for his back pain," and that Plaintiff "was referred twice in the past along with . . . [physical therapy] referral but unsure why he did not go" (Tr. 313). Similarly, the ALJ simply noted that Plaintiff had "sought treatment of his lower back pain from emergency room physicians," and then proceeded to discuss the findings from some of those visits. (Tr. 42.) The ALJ did not tie Plaintiff's emergency room visits to the credibility analysis. (See Tr. 43-46.)

9

that "[t]he respondent, if opposing a motion, shall file a response, including brief, within . . . 30 days if the motion is for summary judgment")), Plaintiff did not do so (see Docket Entries dated November 23, 2016, to the present). Accordingly, the Court need only address the ALJ's evaluation of Dr. Barber's opinions. See generally United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever holds its peace."); Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) (Schroeder, J.) ("A party should not expect a court to do the work that it elected not to do.").

Plaintiff faults the ALJ for "not[ing] that Dr. Barber, in his consultati[ve] physical examination[,] did not make any mental status findings showing signs of clinical depression, though he did diagnose depression" (Docket Entry 15 at 2 (citing Tr. 42-43)), because "Dr. Barber . . . is neither a psychiatrist nor a psychologist," and "his primary focus in examining [Plaintiff] on February 24, 2011 was on [Plaintiff's] orthopedic issues" (id. (citing Tr. 292-97)). Moreover, Plaintiff criticizes the ALJ's "dismissive" treatment of Dr. Barber's opinion because of his reliance on [Plaintiff's mental health] history." (Id.) According to Plaintiff, "[t]he ALJ['s] decision [to] g[i]ve great weight to Dr. Barber's orthopedic findings and their impact on [Plaintiff's]

10

functioning, but . . . dismiss[] [] what Dr. Barber had to say about [Plaintiff's] mental health issues" constitutes "cherry picking" where "professional opinions which support the bottom line decision are exalted, while those not supporting it are dismissed." (Id. at 3 (citing Crowder v. Colvin, 561 F. App'x 740, 745 (10th Cir. 2014)) (internal citation omitted).)  Plaintiff's contentions fail to entitle Plaintiff to any relief.

As an initial matter, Plaintiff's arguments suffer from internal inconsistency.  On the one hand, Plaintiff criticizes the ALJ for noting that Dr. Barber did not make any mental status findings reflecting clinical signs of depression (Docket Entry 15 at 2 (citing Tr. 43)), because Dr. Barber's "primary focus in examining [Plaintiff] . . . was on his orthopedic issues" (id. (citing Tr. 292-97)).  On the other hand, Plaintiff faults the ALJ for "cherry picking" by giving great weight to Dr. Barber's orthopedic findings and "dismiss[ing] [] what Dr. Barber had to say about [Plaintiff's] mental health issues."  (Id. at 3 (citing Tr. 45-46)).  Thus, Plaintiff both insists that the ALJ placed too much and too little emphasis on Dr. Barber's mental health findings, which makes discussion of Plaintiff's arguments difficult.[7]

---

[7] Nor can one reasonably make sense of Plaintiff's suggestion that the Court should reject the ALJ's findings because "[i]t is said that judges fall into two categories, those who admit they are result oriented and those who deny it." (Docket Entry 15 at 3.)  Based on a quotation Plaintiff included thereafter from Judge Richard A. Posner (see id. at 3-4 & n.2), it appears Plaintiff believes that judges who deny result-oriented decision-making do so falsely.  In any event, it remains unclear how Plaintiff would have the Court decide this case in his favor.  Should the Court reverse the ALJ because the ALJ (like all judges)
(continued...)

11

Regardless of the inconsistency in Plaintiff's arguments, the ALJ did not err in his evaluation of Dr. Barber's opinions. The ALJ first addressed Dr. Barber's findings in the context of a generalized discussion regarding Plaintiff's mental health history, noting as follows:

> During the consultative physical examination with Dr. Barber, there were no mental status findings showing clinical signs of depression. [Plaintiff] did not complain of depression, anxiety, or memory impairment; however, he reported auditory and visual hallucinations. Overall the examiner forms a diagnosis of depression, yet only recites [Plaintiff's] history and possible need for mental health treatment for [Plaintiff] to become as emotionally stable as possible.

(Tr. 43 (internal citations omitted).) In this analysis, the ALJ neither dismissed Dr. Barber's mental health findings nor assigned any weight, great or small, to those findings. (Id.) Notably, the analysis precedes by two pages the portion of the ALJ's decision where he weighs the opinion evidence of record, including that of Dr. Barber. (Compare Tr. 43, with Tr. 45-46.)

Furthermore, the ALJ did not err by observing that Dr. Barber based his diagnosis of depression only on Plaintiff's mental health

---

[7] (...continued)
decided the case in a result-oriented fashion, i.e., with a bias against claimants like Plaintiff? But then, would not that mean the Court had decided the case in a result-oriented fashion (because all judges decide cases that way whether they admit it or not)? Which begs the question, how will the Fourth Circuit decide which result-oriented result should stand, the ALJ's or the Court's? Of course any answer the Fourth Circuit gives itself merely would represent yet a third result-oriented determination, perhaps subject to reversal by the United States Supreme Court on that very ground. In other words, Plaintiff's critique of judging ultimately requires rejection of the whole enterprise of seeking equal justice under law through an independent judicial branch. Perhaps our society will end up doing so, but this Court should not decide this case as if our society already has done so.

12

history. Immediately following the ALJ's analysis of Dr. Barber's mental health findings, the ALJ concluded "that one or more of [Plaintiff's] medically determinable impairments could reasonably be expected to produce [Plaintiff's] pain or other symptoms." (Tr. 43.) The regulations instruct that "[m]edical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 416.929(b). However, a patient's medical history is <u>subjective</u>, because the physician derives it from the patient's own reports of past and current medical problems, rather than from <u>objective</u> findings on examination. See <u>Barnette v. Colvin</u>, No. CIV.A. 3:12-06102, 2014 WL 1255331, at *19 (S.D.W. Va. Mar. 26, 2014) (unpublished) ("[T]he only indications of mental impairment appear in [the] [c]laimant's <u>subjective descriptions of his history of present illness and past medical history</u> . . . . [The] [c]laimant argues that these new records reflect 'anxiety related symptoms, including shortness of breath, over a period of two weeks.' However, there are no <u>objective</u> findings or medical conclusions supporting this characterization of [the] [c]laimant's hospital

13

visit." (emphasis added)).  Thus, The ALJ did not err in noting the lack of objective basis for Dr. Barber's depression diagnosis.

Moreover, the ALJ did explicitly weigh Dr. Barber's <u>orthopedic</u> findings, and gave such findings great weight:

> The [ALJ] considered the opinion of the consultative physical examiner, Dr. Barber [].  The examiner reported that [Plaintiff's] back and neck pain results in a mildly decreased ability with regard to the following: tolerance for walking long distances, ability to sit, ability to lift and carry, and ability to travel.  However, [Plaintiff] retained full abilities with regard to the following: tolerance for standing, ability to grasp and manipulate small objects, ability to hear and speak, grip strength and ability to grasp small objects, and ability to raise arms overhead.  Dr. Barber also opined [Plaintiff's] mild back and neck pain would cause mild difficulty performing a job that required prolonged periods of lifting heavy objects.  The opinion of Dr. Barber was given great weight when making the findings herein because it is in line with the medical evidence of record and his own objective findings.

(Tr. 45-46 (internal citations omitted).)  Plaintiff did not challenge the ALJ's analysis and weighing of Dr. Barber's orthopedic findings, and the Court should find that the ALJ supported such analysis with substantial evidence.

In sum, Plaintiff's challenge to the ALJ's evaluation of Dr. Barber's opinions falls short.

### III. CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for

14

Summary Judgment (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 17) be granted, and that this action be dismissed with prejudice.

                                                    /s/ L. Patrick Auld
                                                      **L. Patrick Auld**
                                      **United States Magistrate Judge**

February 24, 2017